UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE CHAMBLIN, JR.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | |
| } | |
| **LIBERTY MUTUAL FIRE** } | |
| **INSURANCE COMPANY,** } | Case No.: 2:17-cv-1556-MHH |
| } | |
| **Defendant.** } | |
| } | |

## MEMORANDUM OPINION

Before the Court is defendant Liberty Mutual Fire Insurance Company's motion to dismiss the claims brought by *pro se* plaintiff Willie Chamblin. (Doc. 13). Mr. Chamblin filed this case against Liberty, his insurance provider, in the Circuit Court of Jefferson County, Alabama. (Doc. 1-1). He asserts several state law causes of action against Liberty based on Liberty's handling of claims that Mr. Chamblin filed for damage to his home. Liberty removed the case from state to federal court, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1). For the reasons explained below, the Court grants Liberty's motion and dismisses Mr. Chamblin's claims.

1

**FACTUAL BACKGROUND**

In 1989, Mr. Chamblin bought insurance for his home in Birmingham, Alabama through Liberty Mutual Fire Insurance Company. (Doc. 12, p. 3). In April of 2011, a tornado damaged Mr. Chamblin's home. (Doc. 1-1, p. 14). In July of 2011, Mr. Chamblin's home suffered water damage which caused mold to grow inside his residence. (Doc. 12, p. 2; Doc. 13-1, pp. 3–4; Doc. 21, p. 6). The damage to Mr. Chamblin's home forced him to vacate temporarily and store his personal belongings while Liberty addressed his claims. (Doc. 12, pp. 3, 5).

Pursuant to the terms of the insurance contract, Liberty and Mr. Chamblin submitted Mr. Chamblin's damages claims to two appraisers, one selected by each party. (Doc. 21, p. 7). The appraisers agreed on sums to compensate Mr. Chamblin for the storm damage, the water damage, and the costs that Mr. Chamblin incurred storing his belongings and finding temporary accommodations. (Doc. 13-1, pp. 2–4). Mr. Chamblin alleges that he had to incur living and storage expenses beyond what Liberty paid him under the appraisal because the interior damage to his home went unremediated. (Doc. 12, p. 2).

Mr. Chamblin filed this case seeking compensatory and punitive damages for the financial hardship that Liberty allegedly caused him through its handling of his insurance claims. Since Liberty removed the case, the Court has held two

telephone conferences with Mr. Chamblin and counsel for Liberty. After the first telephone conference, the Court directed Mr. Chamblin to amend his complaint. (Doc. 11). After Mr. Chamblin amended his complaint, the Court held a second telephone conference to discuss the pending motion to dismiss. During that conference, Mr. Chamblin expressed a desire to obtain the assistance of counsel. (Doc. 21, p. 12). The Court gave Mr. Chamblin a month to do so, but Mr. Chamblin continues to represent himself. (Doc. 17).

**STANDARD OF REVIEW**

Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss based on Rule 12(b)(6) asks the Court to dismiss the complaint because the plaintiff has failed to plead a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To resolve the motion to dismiss, the Court must consider whether the plaintiff has alleged facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The facts that the plaintiff alleges must be sufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the Court "must and do[es]

assume that any well-pleaded allegations in the amended complaint are true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1284 (11th Cir. 2010). "A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). "However, a *pro se* pleading must still suggest that there is at least some factual support for a claim." *Id.*

**DISCUSSION**

In his amended complaint, Mr. Chamblin asserts claims for negligence, breach of contract, and fraud. (Doc. 12). Mr. Chamblin seeks to recover compensatory damages for the damage to his personal property and for his pain and suffering and asks the Court to award punitive damages. Liberty argues that Mr. Chamblin fails to state a claim because Liberty complied with its obligations under the insurance contract by paying Mr. Chamblin the sums awarded through the appraisal that he requested. (Doc. 13, p. 8). In support of its motion, Liberty submits a copy of the insurance contract and signed copies of the appraisals. (Docs. 8-2, 13-1). To resolve this motion, the Court considers these documents as

well as the representations made by the parties during the December 19, 2017 telephone conference.[1]

During the December telephone conference, Mr. Chamblin clarified his position in response to Liberty's contention that the appraisals precluded his claims. Mr. Chablin acknowledged that, with the help of an attorney, he exercised his right under the contract to have the damage to his home appraised by independent parties. (Doc. 21, p. 10, 14). Mr. Chamblin conceded that the appraisal process validly determined the amount he was entitled to recover for the physical damage to his home. (Doc. 21, p. 10). But Mr. Chamblin contends that the appraisal process did not compensate him for the costs he incurred storing his possessions and renting hotel rooms. Specifically, Mr. Chamblin stated that "when they [the appraisers] came up with the appraisal on my personal property and my living expense, to me it was not fair, and it was not right, and I didn't agree with it . . . ." (Doc. 21, p. 10:13–16). Mr. Chamblin does not allege that Liberty failed to pay the sums assessed in the appraisal. He states that he "ha[s] a check that [Liberty] sent [him] for personal property for $6,800 three years ago" which he has not cashed.

---

[1] Mr. Chamblin bases his claims for breach of contract, negligence, and fraud on Liberty's alleged failure to fulfill its obligations under the insurance contract. The contract and the appraisals that Mr. Chamblin requested pursuant to the contract are central to Mr. Chamblin's claims. Therefore, the Court may consider this evidence without converting Liberty's motion to dismiss into a motion for summary judgment. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)

Mr. Chamblin explained that his disagreement with the appraisal of his "additional living expenses," the expansive term used to cover his ancillary costs, prompted him to file this case. (Doc. 21, p. 15: 18–19). But the language of his contract with Liberty indicates that his disagreement does not give rise to a cause of action.

The appraisal provision of Mr. Chamblin's insurance contract states:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will: a. Pay its own appraiser; and b. Bear the other expenses of the appraisal and umpire equally.

(Doc. 8-2, p. 2). Liberty has submitted copies of the three appraisals performed by the parties' independent appraisers. (Doc. 13-1). The first two deal with the physical damage to Mr. Chamblin's residence. The third appraisal addresses the damage to the contents of Mr. Chamblin's home and his additional living expenses. (Doc. 13-1, p. 4). The appraisers awarded Mr. Chamblin a total of $29,825.14 for his personal property and additional living expenses. (Doc. 13-1, p.

6

4). The appraisal states that "The total award is based on the AMOUNT AGREED TO BY APRAISERS Roddy Jerkins & Mark Lively on June 23, 2015, THIS IS A FINAL SETTTEMENT FOR THIS FORMAL APPRAISAL." (Doc. 13-1, p. 4).

The plain language of the insurance contract states that when a party to the agreement requests an appraisal, the amount of the loss is set by the appraisers, if the appraisers agree on an amount. Here, the appraisers agreed on the total amount to which Mr. Chamblin was entitled, and the finality of their determination is stated in their appraisal award. Mr. Chamblin may disagree with the total awarded by the appraisers, but he has not identified language in the contract that allows him to avoid this award. Mr. Chamblin has not explained how Liberty breached the insurance contract when it abided by the contractually-contemplated appraisal process.

Had Liberty procured a favorable appraisal by fraud, then Mr. Chamblin might have a basis for setting the awards aside. But the amended complaint and Mr. Chamblin's representations during the hearing indicate that both his fraud and his negligence claims derive from Liberty's alleged failure to remediate the damage to the interior of his home. (*See* Doc. 12, pp. 2–3, 5–6; Doc. 21, pp. 9–10). As the Court discussed with Mr. Chamblin during the December hearing, the damages to the interior of his home were dealt with through the appraisal process which culminated in award to Mr. Chamblin of $66,288.32 for the storm damage

and $79,492.53 for the water damage. (Doc. 13-1, pp. 2–3; Doc. 21, p. 10). Mr. Chamblin does not plead facts indicating that Liberty behaved in a manner that was either fraudulent or negligent. The facts before the Court indicate that Liberty complied with the terms of the insurance contract.

During the December telephone conference, counsel for Liberty indicated that the company could issue another check to Mr. Chamblin to replace the check he originally received as part of the appraisal award which has since expired. (Doc. 21, p. 15). Under the terms of the contract, Mr. Chamblin is entitled to that money, but the Court finds that he cannot proceed with his claims in this case.

**CONCLUSION**

For the reasons stated above, the Court grants Liberty Mutual Fire Insurance Company's motion and dismisses Mr. Chamblin's claims without prejudice. The Court will enter a separate order closing this case. The Court asks the Clerk of Court to please mail a copy of this order to Mr. Chamblin at his address of record.

**DONE** and **ORDERED** this July 18, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE